Once again, Vince Bronco, Federal Defenders, on behalf of Mr. Aguila. Mr. Aguila's sentence must be reversed because his perjury conviction does not constitute a crime of violence. And there's three separate reasons, at least three separate reasons, why his conviction is not a crime of violence. The first is that a trailer coach under California law does not constitute a dwelling or structure under a Taylor analysis. The second reason is California's definition of aiding and abetting liability is broader than the general federal definition of aiding and abetting. And finally, third, California's interpretation of aiding and abetting as applied specifically to burglary is broader than a general definition of aiding and abetting to burglary. What he pleaded guilty to, according to the indictment, was the burglary of a motorhome and a residence as well. It was conjunctive, the thing that he pleaded guilty to. Correct. The complaint was conjunctive. And under California law, when something's pled into the conjunctive, the trier of fact only has to find one of those things. So the mere fact that it's in the conjunctive means the judge getting the factual basis for the field could have only found one of these different structures. It really doesn't make sense that this individual named in the complaint had a house, a trailer coach and a business. And somehow Mr. Aguilar went and hit each each of these structures. So it's just pled in the conjunctive. But the trier of fact picks one. He entered a guilty plea. Correct. So on that, what was the language used in connection with the plea colloquy? The government has not submitted any of the plea colloquy or the plea agreement in this case. They're relying solely on this complaint that lists three different structures and the abstract of judgment. So we don't know, based on what the government presented to the district court, exactly what theory that he pled guilty to. Further, because aiding and abetting is implied in every complaint under California law, he could have been convicted under an aiding and abetting theory, even though that theory is not alleged in the complaint. And this court specifically held that recently in Pinular versus Gonzalez. In that case, it was a theft case and it just alleged the general theft. But this court found because aiding and abetting is implied in every federal indictment, it didn't foreclose the fact that he could have been convicted of that. So going back to the trailer coach definition in California, a trailer coach is essentially a vehicle. It's designed for either human occupation or habitation, but also for commercial purposes, it has to be able to carry its property on its own structure and it has to be able to be drawn by a motor vehicle. And this means it's somewhat similar to like a railroad car or a cargo container. And in Wiener, this court spelled with a Washington statute that allowed for burglary, even of an inhabited railroad car, cargo container or a fenced area, that that didn't meet the definition of structure that Taylor requires. I mean, it has to be more of a permanent structure, not just like a car. So even though that this trailer coach could be inhabited, it doesn't change the nature of the structure, meaning just like a car, a railroad car, a cargo container, someone could be living in those things. Doesn't change the character of it because that Washington statute required that someone be living or using those structures, railroad car, cargo area, for habitation. So simply because it can be used for habitation doesn't mean it is. And the California case law is clear that these are things that basically can be used to move office materials from one place to another. Why do California cases on on that kind of a pleading govern a federal court looking at a California conviction for purposes of sentencing, say. In other words, it says and we have cases that say if you plead to a indictment in the conjunctive, you have pleaded to everything that's alleged in the indictment. Because in Shepard and in all the Taylor cases, the inquiry that you have to make is whether or not the individual necessarily pled to a generic offense. And because California says in its in its decisions that the judge, the trier of fact, can pick one, it doesn't mean just looking at a complaint that's pled in the conjunctive that the individual necessarily pled to one of these offenses. And it's just like in Pinalar, that argument wouldn't fly because that complaint was charged just as a principle. But this court still held that because under California law, he could be convicted under aiding and abetting theory that it was still overbroad. And you needed more judicially noticeable facts such as the plea colloquy or a plea agreement, facts that weren't in that case and facts that aren't here. Turning to the aiding and abetting argument. First of all, basically, federal law requires that the aider and abetter share the intent of the principle. And California law allows for someone to be convicted without having the intent to commit the specific offense of the principle. And that's why aiding and abetting law federally is broader than aiding and abetting under California law. And I don't know if the courts received it, but I got a 28-J letter from the government. I didn't receive it till Monday. Did the court receive my response letter? Yes. Okay. And I want to go through that because now for the first time they're saying, well, there's this federal concept of natural and probable consequences that applies the same. Well, it doesn't. Basically, under federal law, you can be ignorant of some of the facts and still be held liable under aiding and abetting theory. But federal law is clear. You have to have the same intent and meet all the elements, intent elements of the principle. I think the best case to really show this is the short case that is cited in the government's papers. In short, they use the natural and probable consequences language. But later in that opinion, specifically holds that the aider and abetter couldn't be liable for the armed bank robbery unless the government specifically proved that they had the same intent to use the firearm. And that's really the distinction. If you look at the cases federally, they have a requirement that they have the same intent of the principle. But on the other hand, the cases that are using the natural and probable consequences languages, you can be liable for the natural and probable consequences of your actions. Meaning, for example, in I believe it's the Bennett case that the government sites. The the individual was giving a recipe to make drugs, to manufacture drugs and gave the person the exact place to find the ingredients. And Bennett said you could be held liable under an aiding and abetting theory when that person actually. How did we get to aiding and abetting in this case? I mean, that takes it from a broad jump to a pole vault, doesn't it? I mean, I don't see aiding and abetting anywhere in the charging documents. He was charged with entry into you want to argue dwelling. But where does aiding and abetting come in? Again, under penular, this court has recognized that aiding and abetting is assumed in every California complaint. So just because a California complaint doesn't allege aiding and abetting, it's assumed in the indictment. So a guilty plea to that charge doesn't foreclose, as Shepard requires, does not foreclose the fact that the person could have been convicted under an aiding and abetting theory. That's the same thing that could happen in federal court. You could be charged as a principal. You go in and plead guilty on aiding and abetting. That complaint's not going to show that you pled as an aider and abetter. It's the same thing in federal court. So simply pleading guilty, simply having a complaint doesn't work. I mean, you know, he pleads guilty to the face of the document. Now you're saying, well, it could have been aiding and abetting, and that changes the whole the whole analysis. Don't we just look at the documents and say where we go from there? Absolutely not. You have to look at the documents and the law to see and you have to shift it to say, has the government foreclosed every possibility? And they haven't here because aiding and abetting wasn't alleged. It's speculation that he could have, but it's speculation that the government... Does the government have to foreclose every speculative possibility that maybe that the defendant doesn't even raise? For a non-generic offense? Yes. They have to necessarily show this court, and that's the word, necessarily show that he pled guilty to a predicate offense. So if the laws of California allow him to be convicted for the trailer coach, or the laws of California allow him to be convicted for an aiding and abetting, the government hasn't done their obligation of foreclosing those possibilities. The last area I'd like to talk about is the burglary, aiding and abetting in the state of California is broader than the federal. There's a general rule that burglary is complete on the time you enter the building with the requisite intent. There's also a general rule that you can't be convicted federally of aiding and abetting for an offense that had already been complete. California is broader than these general rules because it allows a conviction for aiding and abetting if the person aids and abets a burglar, even after the entry with the requisite intent, as long as the burglar hasn't left the building. So, for example, under the general rules, if someone broke into a house and is stealing things, and makes a phone call to the aider and abetter and says, I'm stealing things from this house, I broke in, come in and help me. Under federal law, he could not be convicted of aiding and abetting a burglary because the offense had already been committed when he agreed to assist. He could only be convicted of aiding and abetting the theft in the building or any offenses that happen afterwards. California is different. California, when you make that same call, the person comes in, as long as you started helping at any time, you can be convicted of burglary. So, California is clearly broader than the generally accepted definition. I just want to say a few words about the conviction in this case. I think when you evaluate all the issues of whether or not this conviction has been reversed, you have to look to, basically, the context of the entire trial. This trial was about Aguilamante's defense. His defense was that he was coming to the port of entry to see if he could come back and enter. In contrast to that, the agents were saying at the primary inspection, he said he was a U.S. citizen, he never mentioned anything. So, this case was really about credibility of why Mr. Aguila was coming to the port of entry. The government was able to get in, basically, a hearsay document from the primary inspector showing that he had said before, or wrote in a report, that Mr. Aguilamante said that he was a United States citizen. Did that primary inspector testify at trial? He testified at trial, and on direct, is when, before there's any allegation that he was making any false statement whatsoever, they brought in this primary, the inspection referral. The attorney did say that the defendant claimed to be a U.S. citizen. Yes. Which was the same substance of the notation on the little piece of paper. And that's the point. The government's able to bolster their witnesses with inadmissible documents. Why is it harmless? You have the live guy right there testifying. This man, right there, that defendant, told me he was a U.S. citizen. One of the reasons is, later on, he says, well, I know he said U.S. citizen because that's what I wrote on my referral. So he was relying on that referral for his testimony. But that's why I think you have to look at these all together and look at the total effect. He could rely on the referral for his testimony to refresh his recollection. That's not how it was introduced. No, I know it was introduced improperly, if it's hearsay and not under an exception. But still, that doesn't really taint his direct testimony that Judge Nelson's referring to. Even if he referred to it, at least as I understand it, he can testify. He can refresh his memory based on the slip. He can say the slip refreshed my memory, I suspect. And then we have to decide if it was error to introduce the slip was it harmless. Well, I don't think you can evaluate the harmless error of what the government could have done or should have done, but actually what happened. And just because they may have been able, and we don't know, if they would be able to lay the foundation for a recorded recollection, the bottom line is how they introduced it was error. Not recorded recollection, but I think a witness can refresh his memory. Any time. He didn't say he didn't remember. If you don't say you don't remember, you can't refresh with it. So you couldn't get in under that theory anyway. But that's why I think, I understand that there are some possibly harmless error problems. And that's why I'm asking the court to look at all the errors combined, because when Mr. Aguila, in contrast, gets up to testify, then the government starts piling on that he had four different deportations, which I don't see any admissibility on why they have to get in on cross-examination, he's been deported four times. But he did have to prove at least one prior deportation. Correct, and that was virtually undisputed. Was it stipulated or virtually undisputed is quite a bit different. I agree, but there was really no cross-examination on it. It was never really argued. It wasn't a fact that was really in dispute. My understanding was it was not stipulated that he was deported. And also that there was no objection to admission of the two most recent deportations. Then there was objection to the testimony about the earlier ones. I explained in my reply brief why I believe those are preserved. And basically, at a minimum, at least for the two documents of the two deportations, there is a 403 objection that's clear. But as to the government cross-examining, isn't it true that you've been deported four times? There was a specific 404b objection to that. That's clearly preserved. The last issue that I think affects his credibility is the government piling on and saying you were convicted previously of two prior convictions. The case law of this circuit is clear and it's recited in my reply brief that parole revocations don't count unless the government proves that it's related to the offense. And so that was completely inadmissible. Now you're talking about prior convictions? He was impeached with two prior felonies as 609. He admitted to one of them. Yes. And the government still asked, isn't it true you've been convicted of two? That second one was outside the 10-year period. You go into 609b and there was no finding by the judge that it substantially outweighed. There was just a finding that he outweighed. So there's a lot of harmless error there. You're starting to say, well, there's a lot of harmless error going on. Let's combine them all and look at them all together. And I'd like to save two minutes for rebuttal. Good morning, Your Honors. May it please the Court, Steven Stone on behalf of the United States. Were you the trial attorney here, Mr. Stone? That's correct, Your Honor, I was. And I don't know if the panel has a preference or not. I was going to start with the sentencing issues and then go into the evidentiary issues unless the panel wants me to. What's all this aiding and abetting about? Well, I was going to start, Your Honor, with the modified approach. Let me just start by saying that I don't think the sentencing guidelines here are as complex as the defendant makes them out to be. Going to the aiding and abetting first, and the one fact that wasn't stated by a defendant, was that the guidelines state that aiding and abetting is included in terms of the offenses that are considered under 2L1.2. So the express language of the guidelines includes aiding and abetting. So then you don't have to force a speculation about, well, was he aiding or abetting or not? Guidelines include that. Then you have the recent Vidal decision in which this Court noted that the application notes state that aiding and abetting is included. And it rejected the defendant's argument that California law is overbroad because it's broader than federal law. That argument's been rejected already. The Court specifically said in Vidal that California aiding and abetting liability requires proof of all elements that are contained in the federal definition. To get a little more basic to this whole thing, this defendant pleaded guilty. He said the charge was that you erroneously entered into a trailer coach or something and an inhabited dwelling and a building. And he says, yes, I plead guilty. I did all of that. Why do we have to consider aiding and abetting at all? Well, I think that's a very good point, Your Honor. Actually, here we went straight to the modified approach to determine whether or not he was convicted of a crime of violence. This Court's prior decision, United States v. William, in which I believe you were a member of the panel, specifically said that when defendant pleads guilty, the facts state in the conjunctive. He's pleading guilty to all of those facts. And that's what Judge Nelson said. Which is the correct statement of the law. It's also supported by other cases such as Velasco Medina. So he's admitting by pleading guilty to that complaint that he entered an inhabited dwelling, that he entered an inhabited building, and that he entered a trailer coach. But by virtue of that, he's admitted committing two different offenses here that would constitute a crime of violence under the sentencing guidelines. Then why do we have to consider aiding and abetting at all? Your Honor, I don't believe you have to. You know, you both have spent all this time arguing about it. And Mr. Brunkow says, well, he could have been found pleaded guilty because he aided and abetted. Well, because aiding and abetting is implied in California complaints. So it's speculation that he could have been. And I think that's what defense counsel is saying. Therefore, because he could have, this could be overbroad. And our response is, well, that doesn't matter, because aiding and abetting is included under the guidelines anyway. So if for some reason he was an aider and abetter, which we have no evidence that he was, there's only one defendant on that complaint that's been in this case. But even if he was, it doesn't matter, because aiding and abetting is included within the guidelines. And Vidal's decision has rejected the argument that California law is overly broad and this natural and probable consequences argument is foreclosed by the fact that the law of the circuit shows that under federal aiding and abetting law, the natural and probable consequences are included as well. He made perhaps a somewhat related argument that if you look at the conjunctive statement that he entered the trailer courts, inhabited residents in a dwelling, that that's fine under California procedure. The judge then decides which of those was actually committed and must sentence on that basis. Does that change the analysis here at all? I would say no, Your Honor. And the reason is, if we're talking about whether this crime is overly, excuse me, is categorically a crime of violence, it might matter. But we're going straight here to the modified approach. And under the modified approach, when somebody pleads guilty to a complaint such as that, they're admitting each of these elements, excuse me, each of these acts. So I don't think it makes a difference that a judge in a California state court could have just chosen, you know, picked just one out of the three. It doesn't matter. By pleading guilty to this complaint for purposes of the sentencing guidelines, he's admitting each of the acts contained in that complaint. I think the law of the circuit is clear that that's how the guidelines operate. Okay? And the only, the last thing I would just say is as far as the trailer coach argument goes, if you look at the case defense counsel talks about the mobile lease case, when you look at what these relocatable offices are, they're actually, I think it's clear from the case structures. But once again, we don't even get there because aid and embedding is included in the guidelines and under the modified approach, he has admitted to a crime of violence. So unless you have any questions, I'll turn to the evidentiary issues. One thing that we do agree here is that on the evidentiary issues, it's important not to look at these, each issue in a vacuum, but instead look at these in terms of the context of this case. Defense counsel said that the government was piling on in this case. I would submit to you that that's not what happened. What happened here was that you had a very aggressive defense. You had a defendant who took the stand and testified and made up a story that involved a phantom port inspector and statements supposedly made by his wife that only the defendant testified about. Facing that in a story about the defendant coming to the port of entry to seek permission and the defendant saying that he was confused about how to do that and that he was mistaken in his belief that he couldn't come back to the United States because the warnings he'd been given in his last deportation in 2000 didn't have a box checked off telling him how long he could keep out was the basis for this defense which the government had to respond to. And to rebut that story and show that the defendant was being truthful, the government introduced and elicited the evidence that's now the subject of this appeal. And the court, the district court exercises wide latitude in allowing the government to admit that evidence. So turning first to the referral slip, if I can quote defense counsel, trial defense counsel, he came out in the opening statement and charged, made a charge that Officer Obon, the primary inspector, if I can quote the opening statement, he said, now you're going to hear from the agent at the primary inspection that Mr. Aguila said he was a United States citizen. But I want you to know that every other witness, even the government's witnesses, all of them will deny that. They will say the opposite, ladies and gentlemen, they will say that Mr. Aguila never claimed to be a United States citizen and that's because he didn't. Under the plain meaning of federal rule of evidence 801 D1B, that's a charge of fabrication. The rule doesn't say there has to be evidence of a fabrication, but a charge of fabrication. So under the plain meaning of that rule of evidence, that charge has been made. And while I could not find a case that expressly held that a charge made in an opening statement constitutes a charge in this rule of evidence, there are cases out there that support the government's position. One of those is United States v. Reed, 887 F2nd 1398, which is an 11th Circuit case where the charge was made in an opening statement that continued during cross-examination and that court held that that was a charge for purposes of this statute. Two other cases, United States v. Allen, 579 F3rd 531, and United States v. Feldman, 758. First one, Allen's a 9th Circuit case, the other one's a 7th Circuit case, further support the government's position because in those cases it was a similar scenario where a charge was made in an opening statement but then continued in cross-examination. It makes no sense that the government would have to wait to introduce the referral slip after Officer Abban's been cross-examined when the charge was made in the opening statement. The charge is out there. The government introduced the referral statement as a prior consistent statement to show at the time he noted down that the defendant claimed to be a United States citizen. So first there's an express charge of recent fabrication and even if this panel doesn't hold that that's sufficient, during the cross-examination there's a prior consistent statement to him and the implication there was that the wife requested to go to secondary when in reality what Officer Abban had testified to was that the defendant was sent to secondary because he claimed to be a United States citizen, didn't have identification and for those reasons was sent on. So it's an implied charge even if this wasn't non-hearsay, the government believes it should have been admissible as a public record and here we would compare this almost to a warrant of deportation which this court has held is admissible as a public record and the comparison is that the referral slip was done as part of a routine civil immigration process. Standardized administrative questions were asked and this was not a criminal interrogation, much like a warrant of deportation which a detention enforcement officer will note when, how and where an alien is physically removed, here the officer is just documenting the reasons for sending this person to secondary, claim USC, no ID, that was on the referral slip. Furthermore, we believe that in any event, it's harmless error because the defense introduced this referral slip in their case in chief. They introduced both the front side and the back side of the referral slip and it was part of their case and their argument. Wait a minute, now the referral slip came in during your direct examination of the agent if you will. That is correct. During the presentation of your case. Yes. So when the defense gets around to the defense and they want to put, they want to talk about other things on the referral slip. Yes. But it's already been explained I think. Yes, we've introduced it at that point. Well, had that not already been introduced, I suspect the defense could have offered a redacted referral slip. I don't know that they would have. Anyway, go ahead. I see your point, Your Honor. We probably would have asked, well, it's only speculation what would have happened. Turning now to the issue of the deportations. Once again, it's important to look at the context of the case here. There was evidence of four deportations that came out, but you have to look at the way it came in. In the government's case in chief, we offered two warrants of deportation. We offered evidence that he was physically removed in 2000 and that he was physically removed in 1994. In 1994, the warrant of deportation was pursuant to an immigration judge's order. It had just a fingerprint on it. It did not have a picture of the defendant on it. We also introduced then the 2000 reinstatement, which was a warrant of deportation, which had the defendant's picture on it and his fingerprint on it. The government has its burden to meet here. We have to prove that the defendant was deported. That did it right there. It showed a prior deportation. That's correct, Your Honor, and that's what we introduced in our case in chief. The other two deportations, the 1990 and 1992 deportations, didn't come out until cross-examination. It's important to look at the context of that questioning. The questioning was, you've been deported four times. Correct? Correct. I then went through each of the four deportations and asked the question, which is why this was being elicited, which was, isn't it true that each time you were deported, you were given warnings telling you not to come back, that you couldn't come back to the United States? The reason those were introduced was to show that the defendant's story about being confused about how to get permission to come back to the United States, about mistakenly relying on these warnings he was given, which didn't have a box checked off, was false. The fact that he had been given these warnings on four different occasions was offered to rebut that testimony. It wasn't piling on. It was the government trying to give the  evidence to determine whether or not the defendant was telling the truth. And as a subset of the argument, it is true that those deportations also go to the United States. They go to an element of the crime as well, to the defendant's alienage, and to whether he had permission during that time. But the key reason those other deportations were introduced was to rebut the argument that he mistakenly relied on the warnings given to him when he was deported.    issue of the two felony convictions that were introduced, once again, the defendant decided to take the stand and tell the truth. And I think that that's a good example of the government trying to testify at trial. He had six felony, prior felony convictions. The government asked him whether he had been convicted of two different felonies. Pursuant to the district court's order, we sanitized those. We did not get into what the underlying felony was, just that he had been convicted of two felonies. And to directly respond to the defense argument that the district court did not make findings of specific facts and circumstances admitting these prior convictions, we would point this panel to pages 21 to 23 of the appellant's opening brief. That says it all. For over a page, the judge discussed why these were admissible. The court went into great detail explaining that these go to the veracity, excuse me, to the truthfulness of the defendant. That they show that he's not a trustworthy person. The district court noted that the convictions were for first degree veracity. Second degree burglary. Petty theft with a prior. Second degree burglary and grand theft auto and another second degree burglary. And that these affect his truthfulness and credibility. Under the law of the circuit, that's permissible. That is satisfactory. Under United States versus Murray, similar findings were made and this court found that that was proper. The Ben Simmons case, which defense relies on, doesn't change that. That case said that the determination is not made by the importance of the defendant's credibility to the opposing party, but the probative value is enhanced when the defendant's testimony is put up against a government witness's testimony. That the probative value is measured by how well these convictions show trustworthiness. And once again in our argument and our brief, we believe that by offering these one conviction on direct examination, the defendant has waived his right to appeal either of the two convictions here. Because the purpose of bringing out on direct examination the one conviction was to take the sting out of his criminal, entire criminal record. Whether he brought out one conviction versus two, we do not believe matters. The purpose was to take the sting out, which as set forth by cases in this district, excuse me, this circuit, that is not allowed. He has to make a choice. Either bring it out on direct or waive your right. We believe he waived his right to appeal. The next piece of evidence was the videotape. And once again, this is the videotape of the defendant's post Miranda statement. And this was not offered in the government's case in chief. This was offered after the defendant testified and said that he had made certain statements. That he had told Officer Harrison, the agent who took his post Miranda statement that he had come to the Port of Entry to seek permission to legally enter the United States. That wasn't on the tape. So to prove that, the government offered him the entire tape. And while the defense counsel objected to that because he didn't want the jury to see the demeanor of the defendant, he did not object at that time that it contained prejudicial information. And in fact, used a lot of what he is now known as prejudicial information in his closing argument to, in his words, work his way. And the only last issue was one last sentencing issue which was the two years in custody, that the statutory max can only be two years in custody because the defendant did not admit to a prior aggravated felony. That argument has already been precluded by numerous cases in this circuit. And at the same time, Amador's Tories is still good law and the defendant here did admit during the trial to two felony convictions and to multiple deportations. If you have any questions,  have at this time. Thank you very much. I'll try to hammer this home. Your Honor asked why do any of the defendants need to go to the aiding and abetting issue? And that answer is in Pinular v. Gonzales. The Court just reissued an opinion. I only have the Westlaw side of the amended opinion. It came out January 23rd. And in the last three paragraphs of that decision before the conclusion, it first talks about how the government's making an argument, how the that the complaint alleged that the defendant committed the offense as a principle. The next paragraph, this Court recognized, as did Corona Sanchez, that California allows for aiding and abetting to be assumed in every complaint, and then concludes, thus, even if Pinular had pled guilty to the charges of unlawful driving for taking of a vehicle in the information and felony complaint, this alone is inefficient to inequivocally demonstrate that he actually pled guilty to activity of a principle, i.e., taking and exercising control over a stolen car. So this Court has problems with Williams. There's a difference. Williams says alleged in the conjunctive.  isn't alleged in the conjunctive as to aiding and abetting. Aiding and abetting is assumed in this actual complaint. So Pinular controls, and this Court must reach the aiding and abetting decision, or reverse  decision. I don't think Williams controls as to the trailer coach issue in this case. In Williams, there wasn't multiple places that would not categorically qualify as a predicate offense. It wasn't like in Williams that they were alleging that the person actually burglarized three different structures. In this case, that's how it was alleged that Mr. Aguilar actually went into three different places. Under California law, he  just admitted at the guilty plea to just one. Under Shepard, Shepard requires that the Court look to whether or not he necessarily was convicted of a predicate offense. Basically, they failed to do that because he could have pled guilty to a trailer coach. Thank you very much. Aguilar Montez will be submitted to Plaincloth Council for their arguments and we will adjourn for the day.
judges: Thompson, T.G. Nelson, Gould